IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Criminal Action No. 16-cr-00186-MSK-GPG

**UNITED STATES OF AMERICA,**

    Plaintiff,

v.

**ROCKY HUTSON,**

    Defendant.

___

**OPINION AND ORDER DENYING AFFIRMATIVE DEFENSE**
___

**THIS MATTER** comes before the Court pursuant to Mr. Hutson's oral request for leave to present evidence (and receive instructions consistent with) an affirmative defense under the Religious Freedom Restoration Act ("RFRA"),[1] 42 U.S.C. § 2000bb *et. seq.* Mr. Hutson filed a Trial Memorandum **(# 119)** setting forth certain aspects of his request and the Government filed a responsive Trial Memorandum **(# 137)**. On January 8, 2018, the Court heard lengthy argument from counsel, testimony from Mr. Hutson, and received documentary evidence. At the conclusion of that hearing, the Court orally denied Mr. Hutson's motion. This Opinion elaborates on the reasons for that denial.

---

[1] At oral argument, Mr. Hutson contended that he was also asserting his defense under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc. That statute expressly applies only to land use decisions, 42 U.S.C. § 2000cc(a)(1), and the rights of incarcerated persons. 42 U.S.C. § 2000cc-1(a). It is unclear how RLUIPA would apply to Mr. Hutson here.

1

**FACTS**

As background, the Court recites some of the pertinent evidence here, and elaborates as necessary in its analysis.

Mr. Hutson is charged with five counts of making false claims against the United States in violation of 18 U.S.C. § 287, six counts of creating false financial instruments in violation of 18 U.S.C. § 514(a)(1), and three counts of bank fraud in violation of 18 U.S.C. § 1344.

Mr. Hutson was a member of the Colorado Free State Republic.[2] That entity is affiliated with a national entity called the Republic for the United States of America. More generally, Mr. Hutson describes himself as a "Sovereign Citizen." As a Sovereign Citizen and member of the aforementioned groups, Mr. Hutson believes that all persons are "endowed by their Creator with certain inalienable rights," as stated in the Declaration of Independence. He believes that the Creator[3] has set forth certain "laws of nature" that must be obeyed by the people. These precise laws are unclear, but they appear to be related to the inalienable rights described in the Declaration of Independence: essentially, the ability to freely enjoy "life, liberty, and the pursuit of happiness." The people, in turn, create government to regulate their affairs, although the government is answerable to the people and can never supersede the Creator's natural law. Mr. Hutson believes that the current form of American government is no longer responsive to the people's needs and desires, and is therefore corrupt. Therefore, he believes that he has an

---

[2] Mr. Hutson states he was "kicked out" of that organization in 2016, following his arrest in this case.

[3] Mr. Hutson testified that "I believe in one God, Jesus Christ was his son, and the Holy Ghost is his spirit."

2

obligation to oppose that government and to help others to do so, so that people can "live without government rule."

Sovereign Citizens observe certain rituals. Mr. Hutson's testimony and argument focuses on the ritual entitled "redemption." He explains that at the time of each citizen's birth, the government "pledge[s] the lifetime earning capacity of each of its citizens to foreign investors" and simultaneously creates a bank account that "holds cash collateral for this pledge."[4] (Later, at trial, Mr. Hutson referred to this account as his "birth certificate fund," and the Court will adopt this label for purposes of this opinion.) Normally, the birth certificate fund is only made available to an artificial, government-created "strawman" that bears the same name as the citizen.[5] To obtain access to the birth certificate fund, the citizen must "redeem" the money, by disclaiming or extinguishing the existence of the strawman. The redemption ritual is performed by the citizen mailing certain forms, documents -- Mr. Hutson testified that he "turned in my Social Security card, . . . turned in my birth certificate" -- and a blank check drawn on the citizen's closed personal checking account, to various government agencies. The mailing appears to complete the ritual, as Mr. Hutson testified that he expected no response from the government officials. He explained that he understood that, through their silence, the government manifested its acceptance of his redemption.

Mr. Hutson explained that, once redemption was completed, the citizen acquired the status of a "secured party creditor." A secured party creditor could then draw upon the birth

---

[4] Mr. Hutson testified that a person could access the website of Fidelity Investments to "run the CUSIP number on your birth certificate" to ascertain "what your birth certificate is being traded at on a daily basis."

[5] The strawman identity is somehow associated with the government issuing identification cards and other documents that spell the citizen's name in capital letters.

certificate fund by issuing checks – typically drawn on the citizen's closed personal checking account -- with the routing and account numbers altered by hand. The secured party creditor writes in the routing number of the Federal Reserve Bank branch where the citizen was born, and replaces the printed account number with his Social Security number.[6] Mr. Hutson explained that the various checks and claims would thereafter be paid by the government from funds in the citizen's birth certificate account. As Mr. Hutson explained "the paperwork that was sent in was supposed to open up the account that the Treasury has [and] every EFT that was sent in, every promissory note that was sent in, would have been and should have been taken care of by the U.S. Treasury." Mr. Hutson testified that he completed the redemption ritual and became a secured party creditor in September or October 2011.

These beliefs set the stage for the charged conduct in this case. Mr. Hutson is accused of issuing false checks to various entities. Mr. Hutson is also accused of sending invoices or payment requests to the U.S.D.A., requesting that they remit funds to, among others, a motorcycle dealership, to pay for purchases Mr. Hutson wishes to make. These requests were also accompanied by modified checks drawn on Mr. Hutson's closed personal checking account, made payable to the United States of America.

Mr. Hutson testified briefly about his beliefs concerning an afterlife. He stated that, upon his death, he hopes that "go see my Creator and be taken in." His referenced the notion of "divine providence," as that term is used in the closing paragraph of the Declaration of

---

[6] There are certain other endorsements that the secured party creditor includes on the checks, such as "EFT only" and "without recourse."

Independence,[7] testifying that he understands it to mean that "as long as we're doing so in a non-violent manner, we will go to our Creator with no worries."

Mr. Hutson states that the Republic of the United States is "a religion," because "every meeting that has taken place, we ask for guidance from God in a prayer before the meeting starts. We pledge our allegiance to God and the United States." Mr. Hutson believes that whether the meeting is being held in a "$10 million building" or in a park, "God is going to be present there." As discussed herein, however, the Republic of the United States' own document expressly states that it is "not a religion."

## ANALYSIS

Mr. Hutson requests that he be permitted to admit evidence, to receive jury instructions on, and to include in the verdict form certain interrogatories regarding an affirmative defense under RFRA. Courts have recognized RFRA as creating an affirmative defense that the accused can raise in a criminal prosecution. *U.S. v. Quaintance,* 608 F.3d 717, 719 (10th Cir. 2010); *U.S. v. Christie,* 825 F.3d 1048, 1055 (9th Cir. 2016).

RFRA provides that the Government is generally prohibited from burdening a person's exercise of religion, even by operation of a law of general applicability. 42 U.S.C. § 2000bb-1(a). A person may assert this provision of RFRA as a defense in a criminal proceeding. 42 U.S.C. § 2000bb-1(c). If a person asserts that enforcement of a criminal statute has burdened his religious exercise, the statute can only be enforced if: (i) it is in furtherance of a compelling governmental interest, and (ii) that the statute is the least-restrictive means of furthering that interest. 42 U.S.C. § 2000bb-1(b).

---

[7] "And for the support of this Declaration, with a firm reliance on the protection of Divine Providence, we mutually pledge to each other our Lives, our Fortunes, and our sacred Honor."

## A. Defendant's burden

The burden of going forward is on the criminal defendant, who must demonstrate that: (i) he has a sincerely-held religious belief, and (ii) that his belief or practice is substantially burdened by the enforcement of the criminal statutes he is charged with violating. *Quaintance*, 608 F.3d at 719-20.

### 1. "Religious" belief

The first question is whether the defendant holds a belief that is religious in nature. The Supreme Court clearly distinguishes between beliefs that are religious in nature and those that are based on "purely secular considerations." *Wisconsin v. Yoder*, 406 U.S. 205, 216 (1972). Beyond acknowledging this distinction, the Supreme Court has offered no meaningful guidance, largely observing simply that the matter presents "a most delicate question." *Id.* The 10th Circuit has provided greater guidance, identifying five primary factors and numerous sub-factors that help determine whether beliefs are religious in nature. *U.S. v. Meyers*, 95 F.3d 1475, 1483 (10th Cir. 1996).[8] The major factors are: (i) "ultimate ideas," in that the beliefs address "existential matters, such as man's sense of being; teleological matters, such as man's purpose in life; and

---

[8] Mr. Hutson argued that *Meyers* has been superseded by cases such as *Burwell v. Hobby Lobby Stores, Inc.*, 134 S.Ct. 2751 (2014) and *Gonzales v. O Centro Espirita Beneficente Uniao De Vegetal,* 546 U.S. 418 (2006), such that it is no longer necessary or appropriate for a court to consider whether a stated belief is indeed religious. He does not point to any specific portion of these decisions that purportedly repudiate *Meyers*. (*Meyers* is not cited in any way in either decision.) This Court has carefully reviewed both decisions and sees nothing in either that would suggest that the Supreme Court was repudiating the *Meyers* analysis. Notably, in both Supreme Court decisions, the parties agreed that the beliefs at issue were religious in nature and the Court was not called upon to consider that question. *O Centro*, 546 U.S. at 426 ("the Government conceded that the challenged application of the Controlled Substances Act would substantially burden a sincere exercise of religion"); *Burwell*, 134 S.Ct. at 2775 ("As we have noted, the Hahns and Greens have a sincere religious belief that life begins at conception"). Thus, nothing in either case indicates that the Supreme Court has squarely rejected the multi-factor analysis of *Meyers*, nor offered a substitute test to be used instead.

cosmological matters, such as man's place in the universe"; (ii) "metaphysical beliefs," that "address a reality which transcends the physical and immediately-apparent world"; (iii) a moral or ethical system that "describe certain acts in normative terms, such as "right and wrong," "good and evil," or "just and unjust"; (iv) comprehensiveness, in that the beliefs offer "an overreaching array of beliefs that coalesce to provide the believer with answers to many, if not most, of the problems and concerns that confront humans," rather than being beliefs "confined to one question or a single teaching"; and (v) the "accoutrements of religion," encompassing a broad array of notions including having a founder or prophet, having divinely-inspired writings or teachings, sacred places, ceremonies and rituals, and sacred holidays, among many others. The factors are non-exclusive and non-dispositive, and the burden on a claimed adherent is "low." *Id*. at 1482-83.

In *Meyers*, the 10th Circuit considered a RFRA defense in a criminal prosecution for distribution of marijuana in violation of the Controlled Substances Act. The defendant contended that "he is the founder and Reverend of the Church of Marijuana and that it is his sincere belief that his religion commands him to use, possess, grow and distribute marijuana for the good of mankind and the planet earth." The trial court, after hearing evidence on the factors above, concluded that "Marijuana's medical, therapeutic, and social effects are secular, not religious . . .Meyers' secular and religious beliefs overlap only in the sense that Meyers holds secular beliefs which he believes so deeply that he has transformed them into a "religion." On appeal, the 10th Circuit affirmed, agreeing that "Meyers' beliefs more accurately espouse a philosophy and/or way of life rather than a "religion." Thus, the 10th Circuit affirmed the trial court's refusal to permit the defendant to raise a defense under RFRA.

Here, the Court finds that Mr. Hutson's beliefs are not religious in nature. First, and perhaps most notably, Mr. Hutson admitted a document entitled "Law Form of our American Republic," which is the doctrinal statement of the Republic of the United States. Mr. Hutson acknowledged that he believes all of the principles contained within that document. The document states, unambiguously:

> the people chose the principals (sic) of God's law, the law of nature as the fundamental basis for their liberty. They recognized that the Sovereign Creator imparted the desire to govern themselves according to His principals (sic) (His law) in all mankind; the innate concept that that there should be 'liberty and justice for all.' These principals (sic) establish and uphold life, they promote harmony and equality and they maintain lawful order, peace, and justice among His creation. <u>This is not a religion</u>; this is God's divine order of things. <u>It does not require a belief in Him or even recognition of His existence to be true.</u> It does require that people abide by the law form in order for our nation to be protected by God. (Emphasis added.)

Mr. Hutson acknowledged the underlined language, explaining that "people have the right to choose whatever they want." He went on to explain that "my belief is that this is what God wants us to do." Thus, by Mr. Hutson's own admission, the beliefs of the Republic of the United States or of Sovereign Citizens <u>as a whole</u> are not religious in nature. The question the becomes whether Mr. Hutson's <u>individual</u> beliefs are religious in nature.

Turning to the *Meyers* factors, this Court finds that Mr. Hutson's beliefs, particularly the beliefs implicated in this action, are not religious in nature. Mr. Hutson's beliefs are essentially political and secular, with only an incidental connection to matters of religion. His reference to God or a Creator pertain only to the origin and role of the government. At bottom, the ritual of redemption appears to be primarily (if not purely) fiscal in nature: its purpose is to unlock to the birth certificate fund for the citizen and obtain access to the money therein. Such concerns lack what *Meyers* refers to as a "metaphysical" character, one that "address a reality which transcends

8

the physical and immediately-apparent world." Beliefs devoted to accessing earthly riches held by the government are far from such transcendental concerns. To the extent that Mr. Hutson's beliefs and employment of the redemption ritual was to liberate himself from governmental regulation in order to live more freely, the focus of those beliefs remain on the proper role of government in the <u>earthly</u> lives of citizens.[9] Put another way, when describing the realm that awaits him after his death – reunification with the Creator – Mr. Hutson did not suggest that divine judgment would be based upon whether he had freed his strawman or the degree to which he accessed his birth certificate fund. The desire to be free from government intrusion in one's activities or to have access to untapped wealth are mere earthly concerns, not of the metaphysical nature that *Meyers* describes are inherent in religious beliefs.

Mr. Hutson's articulation of his beliefs also lack the "comprehensiveness" that *Meyers* anticipates. Mr. Hutson's beliefs and practices were focused on one single objective: to shrug off the strawman and live unfettered by government interference. He has not described "an overreaching array of beliefs that coalesce to provide the believer with answers to many, if not most, of the problems and concerns that confront humans." His articulation of his beliefs does not address such fundamental human concerns as why people were created, why they must get

---

[9] A cogent illustration is to imagine that circumstances caused Mr. Hutson to have to emigrate and take up residence in another country. Would Mr. Hutson's beliefs persist if he were suddenly subject to a different form of government, premised upon different founding principles? Because his stated beliefs are so tied to the Declaration of Independence and acts ostensibly taken uniquely by the United States government, the answer would likely be "no." (The Court anticipates that Mr. Hutson might still retain a healthy suspicion about the virtue of his new country's government, though.) But that simply illustrates the secular nature of these particular beliefs. A Jew moving from Israel to Tibet can still retain all the beliefs and individual observances of Judaism; a Muslim who moves to a remote Alaskan village can still pray five times a day and fast during Ramadan. But Mr. Hutson, suddenly taking up residence in Morocco, would no longer have the same ability or need to practice the ritual of redemption as he does in the United States. This demonstrates that his beliefs are entirely political and secular, not religious.

9

sick and die, why evil exists, or what one must do to curry the Creator's favor. In this last regard, the Court notes that Mr. Hutson has never even stated that the Creator <u>commands</u> humans to engage in redemption, nor articulated the divine consequences that befall those who do not do so in their lifetime.

Finally, the Court agrees with the Government that Mr. Hutson has not articulated the common accoutrements that are representative of religious belief. He knows of "some of the founding members" of the Republic of the United States (all of whom are "either incarcerated or dead"), but identifies no spiritual (as opposed to simply organizational) contributions by them. When asked about "important writings" to the Republic of the United States, Mr. Hutson does describe divinely-inspired revelations or venerable teachings on existential themes. Instead, he describes how "an attorney wrote up a document for the members of the Republic to fill out and send in" to the government. In other words, he identifies only functional writings. Similarly, Mr. Hutson identifies no holidays or observances that are uniquely important to Sovereign Citizens, and no totems or insignia that Sovereign Citizens might wear or use to identify themselves to other members from one another. In all important respects, the beliefs of Sovereign Citizens of members of the Republic of the United States do not bear any of the expected indicia of a religion.

This is not to disparage the importance or intensity of Mr. Hutson's beliefs. A person can possess powerful and strongly-held beliefs without those beliefs being religious. A person dedicated to the cause of civil rights might write fiery speeches and editorials, march in protests, and put their very life at risk in furtherance of what they believe, but such passion does not convert their secular beliefs into religious ones. It is possible for Mr. Hutson to be a devoted

citizen and scholar of law and history, even if the strong beliefs he holds are merely political, civic, or secular.

For these reasons, the Court finds that the record reflects that the beliefs Mr. Hutson describes are secular in nature, not religious. For this reason alone, the Court would deny his request to proceed on a RFRA defense.

### 2. Sincerity

Assuming Mr. Hutson's beliefs could be deemed to be religious, the next inquiry is whether Mr. Hutson sincerely holds those beliefs. Determination of whether a belief is "sincere" is a fairly simple one: the Court is "limited to asking whether the claimant is (in essence) seeking to perpetrate a fraud on the court—whether he actually holds the beliefs he claims to hold." *Yellowbear v. Lampert*, 741 F.3d 48, 54 (10th Cir. 2014) (interpreting the similar Religious Land Use and Institutionalized Persons Act); *see also Kay v. Bemis*, 500 F.3d 1214, 1219 (10th Cir. 2007).

This Court finds that Mr. Hutson sincerely holds the beliefs he espouses. Mr. Hutson sincerely believes that the government of the United States is corrupt and that it inhibits him from enjoying the full measure of freedoms that his Creator intends for him.

### 3. Substantial burden

Assuming that a defendant establishes that he sincerely holds religious beliefs, he is protected under RFRA only if he also shows that the government's enforcement of the criminal statute at issue "substantially burdens" his religious beliefs or practices. A statute "substantially burdens" a religious belief if the government requires the person to participate in an activity prohibited by a sincerely held religious belief, prevents the person from participating in an activity motivated by a sincerely held religious belief, or produces a situation where the only

practical course of action requires the person to choose between following the dictates of his faith and winning an important benefit or forgoing a considerable penalty. *Yellowbear*, 741 F.3d at 55.

This element presents difficulty for Mr. Hutson. As the Court understands his beliefs, he is encouraged to engage in the ritual of redemption – that is, to send documents to the government that disavow his strawman and claim his birth certificate funds. Mr. Hutson acknowledges that he completed this ritual before the events that led to the charges here and he suffered no adverse consequences from doing so. Indeed, as expected, this practice attracted nothing but silence from the government agencies to whom he sent documents.

The charges here stem from Mr. Hutson taking the next step. He made demands for payment of money by government agencies, he issued checks that he expected the government to pay, and he attempted to pay off debts by drawing against funds he expected the government to pay. These actions, however, are not linked to any religious belief or practice Mr. Hutson described. Mr. Hutson did not testify that his religion requires or encourages him to access the birth certificate funds once he has redeemed them. The prosecution of counts against Mr. Hutson in this action have nothing to do with his exercise of the redemption ritual, they have to do with the actions Mr. Hutson took <u>after</u> performing that ritual. Had Mr. Hutson simply completed the redemption ritual and done nothing more, no charges would have been filed against him and his alleged religious beliefs would remain unburdened.

Consequently, Mr. Hutson has not shown that his religious exercise – the ritual of redemption – has been substantially burdened by the charges brought in this action. The Court would deny Mr. Hutson's request to pursue a RFRA defense on this ground as well.

### B. Government's burden

For purposes of completeness, the Court assumes, for the moment, that Mr. Hutson could have carried his burden under RFRA. If so, the burden would shift to the Government to show both a compelling governmental interest in enforcing the applicable criminal statutes and to show that the enforcement of such statutes is the least restrictive means of achieving that interest.

### 1. Compelling interest

The question of whether the Government has a compelling interest is assessed not in "broadly formulated" terms, but rather, requires "scrutinizing the asserted harm of granting specific exemptions to particular religious claimants." In other words, the Court must consider the compelling interest in prosecuting the particular person whose religious interests are being burdened. *Burwell v. Hobby Lobby Stores, Inc.*, 134 S.Ct. 2751, 2779 (2014); *see also Yellowbear*, 741 F.3d at 57 ("The more abstract the level of inquiry, often the better the governmental interest will look").

A "compelling interest" is one that attacks "[o]nly the gravest abuses, endangering paramount interest[s]," *Sherbert v. Verner*, 374 U.S. 398, 406 (1963), and "only those interests of the highest order and those not otherwise served" are considered compelling. *Wisconsin v. Yoder*, 406 U.S. 205, 215 (1972). In *Yellowbear*, the 10th Circuit described a compelling interest as "one or another of the fundamental concerns of government: public health and safety, public peace and order, defense, revenue." 741 F.3d at 57.

Here, the Government has identified the compelling interest for the statutes being enforced as protecting public funds against improper disbursement and protecting the government and private financial entities from fraud. The question thus becomes whether the Government has a compelling interest in protecting itself and the public from fraudsters. Mr.

13

Hutson's counsel concedes that such an interest exists and is indeed compelling: "of course, the government does have a compelling interest in protecting people and institutions from fraud." Thus, the Court is satisfied that the Government has adequately identified a compelling interest that is served by prosecuting Mr. Hutson, even if his beliefs are religious in nature.

### 2. Least restrictive means

Finally, the Government must establish that the enforcement of the criminal statutes at issue is the "least restrictive means" of effectively satisfying the compelling interest of protecting the government and others against fraud. The Government must show that "proposed alternatives will not be as effective as the challenged statute." *Ashcroft v. ACLU*, 542 U.S. 656, 665 (2004). In other words, the Government is obligated to show that any alternatives the defendant can propose would be less effective in effectuating the compelling interest. *See e.g. U.S. v. Playboy Entertainment Group, Inc.*, 529 U.S. 803, 816 (2000) ("When a plausible, less restrictive alternative is offered to a content-based speech restriction, it is the Government's obligation to prove that the alternative will be ineffective to achieve its goals"); *Yellowbear*, 741 F.3d at 62 (government must "refute ... alternative schemes suggested by the plaintiff to achieve that same interest and show why they are inadequate").

Mr. Hutson proposes a single alternative that he contends would protect the public. He argues that education of third parties would be a sufficient way to protect against fraud:

> That is kind of obvious is training. If we're going to allow these
> institutions to be federally insured under the FDIC, why not
> require a separate ten-minute training -- I'm sure they already go --
> they already undergo a lot of training to have certifications, require
> their employees to take a ten-minute course or to read some sort of
> notice or pamphlet that says, these are the sovereigns, these are
> some of the factions of the sovereign citizen rents and these are

14

some expressions of First Amendment rights. Know how to spot them.[10]

Putting aside several obvious questions – who would provide such training?, who would receive it?, how many institutions would be involved and how many persons within such institutions would be required to be trained?, etc. – the Court addresses Mr. Hutson's proposed alternative at a more abstract level. Mr. Hutson's alleged fraud was not simply perpetrated against FDIC-insured banks. His alleged victims in this case include a car dealership, a seller of real property, a motorcycle dealership, and creditors holding both secured and unsecured debts. The anti-fraud training that Mr. Hutson proposes would have to address a broad array of different entities in order to be effective: not merely FDIC-insured institutions, but any person or entity that accepted checks, from sellers of real estate to the local grocery. The training would also have to cover the wide variety of (potentially ever-changing) techniques and devices – checks drawn on closed accounts, altered routing and account numbers, unusual and meaningless endorsement language – all designed to deceive the recipient into believing the check is valid. Delivering comprehensive training to every single entity in the commercial economy is a far less effective means to combat fraud than criminal prosecution of the few persons who actually engage in such fraud. Accordingly, the Court would find that, even if Mr. Hutson had adequately shown that the Government's prosecution of him here has significantly burdened a sincere religious belief he holds, the Government has nevertheless carried its burden to show that

---

[10] Mr. Hutson's counsel also sought to admit a newspaper article and some other documents. The Court finds no foundation exists to admit such documents, and Mr. Hutson's request that the Court take judicial notice of their contents is not well-taken. Nevertheless, the Court will recognize that, in essence, Mr. Hutson is proposing little more than a variant of his suggestion that training the entire public to recognize and deal with Sovereign Citizens is a less-restrictive means of preventing fraud than prosecuting those Sovereign Citizens who engage in such fraud.

15

such prosecution is the least-restrictive means of achieving a compelling governmental interest. Thus, Mr. Hutson is not entitled to a RFRA defense.

## **CONCLUSION**

For the foregoing reasons, the Court finds that Mr. Hutson may not assert nor present evidence on an affirmative defense under RFRA, nor will the Court instruct the jury on such a defense.

Dated this 10th day of January, 2018.

**BY THE COURT:**

_____

Marcia S. Krieger
Chief United States District Judge