**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Marcia S. Krieger**

**Criminal Action No. 16-cr-00186-MSK-GPG**

**UNITED STATES OF AMERICA,**

     **Plaintiff,**

**v.**

**ROCKY HUTSON,**

     **Defendant.**

---

**OPINION AND ORDER DENYING MOTIONS FOR COMPASSIONATE RELEASE
WITHOUT PREJUDICE**

---

**THIS MATTER** is before the Court pursuant to Mr. Hutson's Motion for Release From Custody Pursuant to the First Step Act **(# 237)**, the Government's response **(# 239)**, and Mr. Hutson's reply **(# 241)**.  The Court deems those filings to supplement Mr. Hutson's other filings **(# 220, 232, 236)** on this issue.

Mr. Hutson was convicted of several counts of filing false claims, 18 U.S.C. § 287; creating fictitious financial instruments, 18 U.S.C. § 514(a)(1); and bank fraud, 18 U.S.C. § 1344.  In May 2018, he was sentenced to 70 months in prison, to be followed by a 3-year period of supervised release.  The Court understands Mr. Hutson to have self-surrendered on June 15, 2018, and thus, he has served approximately 25 months of that custodial sentence.

In February 2020, Mr. Hutson first moved **(# 220)** for compassionate release pursuant to the First Step Act.  He cited to his age (currently 62), ongoing cardiovascular concerns which he contends have not been properly treated, as well as concerns about his back and a hernia, among

1

other matters.  He requests that the Court reduce his sentence to time served and allow him to be released to his home to begin a period of supervised release.[1]

The Court may reduce a previously-imposed sentence under 18 U.S.C. § 3582(c) if, among other things, the requested reduction is "consistent with the applicable policy statements issued by the Sentencing Commission."  Section 1B1.13 of the Sentencing Commission Guidelines permit the Court to reduce a term of imprisonment if: (i) "extraordinary and compelling circumstances warrant the reduction" and (ii) the factors set forth in 18 U.S.C. § 3553(a) would otherwise be satisfied by such a reduction.  The Guidelines define "extraordinary and compelling circumstances" as existing where, among other alternatives: (i) the defendant is suffering from a terminal illness with an end of life trajectory; (ii) the defendant is suffering from a serious physical or mental condition or age-related deterioration that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility"; (iii) the defendant is 65 years old or older, suffering from a serious deterioration in physical or mental health due to aging, and has served at least 75% of his term of imprisonment.  §1B1.13, *comment* 1(A)-(C).

Mr. Hutson does not meet any of these criteria.  Although he has longstanding and problematic cardiac concerns, there is no indication that he currently suffers from any terminal illness or one that has an end-of-life trajectory (the Guidelines give examples of such illnesses as certain cancers, ALS, end-stage organ disease, and advanced dementia).  Mr. Hutson does not profess to be unable to provide for his own self-care – to eat or bathe or ambulate – within the

---

[1]      To the extent Mr. Hutson requests release under a Bureau of Prisons pilot project allowing for home confinement in lieu of custodial incarceration, the Court lacks jurisdiction over that request.  The BOP has sole authority to determine which defendants will be eligible under that project.

prison environment.  And he is not 65 years of age or older, and has not completed at least 75% of his term of imprisonment.  Accordingly, on his initial application, Mr. Hutson is not eligible for release pursuant to §1B1.13, regardless of the application of the 18 U.S.C. § 3553(a) factors.

In July 2020, Mr. Hutson's counsel filed another motion **(# 237)** requesting consideration for compassionate release.  It focused on concerns about the effect of the COVID-19 pandemic on prison inmates generally and upon inmates with known COVID-19 co-morbidities, such as Mr. Hutson.  In response, the Government concedes that, in light of the COVID-19 pandemic and the Department of Justice's own policy statements, inmates who present one or more of the known COVID-19-related risk factors are deemed to meet the "extraordinary and compelling reasons" test of §1B1.13.  The Government thus concedes that  Mr. Hutson's chronic heart condition satisfies the "extraordinary and compelling reasons" requirement.  However, the Government argues that Mr. Hutson nevertheless is not entitled to  release under the 18 U.S.C. § 3553(a) considerations.

In considering a request for compassionate release, the Court revisits the sentencing objectives and factors set out in18 U.S.C § 3553(a), to determine what sentence is sufficient but no greater than necessary to meet them. A sentence must: 1) reflect the seriousness of the offense; 2) adequately deter criminal conduct; 3) protect the public from further crimes by the defendant; and 4) provide the defendant with needed educational or vocational training, medical care or other correctional treatment in the most effective manner.   In assessing these objectives, the statute directs the Court to consider certain factors: 1) the nature and circumstances of the offense and the characteristics and history of the defendant; 2) the kinds of sentences that are available; 3) the sentence prescribed by the Federal Sentencing Guidelines; 4) the need to avoid unwarranted sentence disparities among defendants with similar records found guilty of similar

conduct; and 5) the need for restitution.  The Court addressed each sentencing objective when initially imposing sentence.  Most of the facts and analysis recited by the Court during Mr. Hutson's sentencing remain unchanged even in light of the COVID-19 pandemic.  In other words, the nature and circumstances of the offense, Mr. Hutson's own history and characteristics, the need for deterrence, and so on are all objectives that are unaffected by the COVID-19 pandemic.

Mr. Hutson considers himself to be a "sovereign citizen", meaning that he does not recognize many aspects of the legal authority or  laws of the United States, and he believes (based on a curious mix of historical reference and commercial law) that the federal government is obligated to pay for the personal debts that he and others have incurred.  He was convicted on 14 counts – five for making false claims on the federal government, six for creating fictitious financial instruments and three for bank fraud. His conviction arose from his demands for payment from the federal government and his implementation of a scheme whereby he induced friends and family to incur personal and business debts, then make demand on the federal government to pay for them.  The parties agreed at sentencing that the intended loss was greater than $9.5 million, and the Federal Sentencing Guidelines recommended a sentence of 151 to 188 months of incarceration. The parties agreed that some form of downward departure would be warranted particularly because the actual loss was dramatically lower than the intended loss. The Court addressed the unique circumstances warranting a departure in the form of a variant sentence, concluding that a sentence of 70 months of incarceration was appropriate in light of the provisions  of §3553(a).

At this juncture, the only §3553(a) consideration that warrants re-examination in light of the pandemic is the need to provide Mr. Hutson with medical care.  There is no dispute that Mr.

Hutson's cardiac condition presents a risk that, should Mr. Hutson contract COVID-1919, he may need particularized medical care or suffer more severe (and potentially fatal) complications. But at this moment, he has neither contracted COVID-19 nor does he have any greater need for medical care than he did at the time of sentencing.[2]   His concern is that he may need future medical care if he contracts COVID-19, and implicitly argues that the BOP would be unable to provide the care that he would require.  This concern, however, is speculative and unsupported by evidence.  Consequently, Mr. Hutson's fear does not change the Court's §3553(a) analysis.

In his motion, Mr. Hutson argues that there is a risk that he may contract COVID-19. This is true whether Mr. Hutson is in the custody of the BOP or not.  His motion contains statistics as to current infections in various BOP institutions.  Even if accurate, they do not approximate the risk he faces at FCI Big Spring where he is housed, nor do they offer a comparison between Mr. Hutson's relative risk of infection while incarcerated related to his risk of infection if he is at liberty in his own home community.  The statistics as to the infection rate in institutions other than where Mr. Hutson is housed are irrelevant in the absence of a showing that all facilities have uniform inmate and staff populations, procedures and policies, and similar physical facilities.  In the absence of that showing, the proper lens to look through is the COVID-19 spread at FCI Big Spring.  As of the date of this Order, the BOP's COVID-19-tracking website reports a total of 4 confirmed cases of COVID-19 among an inmate population of approximately 1,000, along with 6 confirmed cases involving staff members.  (The Court has monitored the BOP's tracking website for approximately the last 14 days and notes that the number of infected staff has remained steady throughout that period, while the number of inmate

---

[2]      The Court recommended that the BOP place Mr. Hutson in a medical facility, but the BOP appears to have rejected that recommendation.

cases held steady throughout that period at 3, rising to 4 on August 21, 2020.)  This data suggests that efforts to prevent or contain the spread of COVID-19 at Big Spring have been largely successful, which in turn suggests that Mr. Hutson's risk of exposure is low compared to inmates in other institutions.

However, the calculation of Mr. Hutson's risk of infection is not limited to the statistics applicable to  Big Spring because the risk of infection exists outside of the BOP, as well.  His risk while incarcerated at Big Spring must be compared to his risk that he would face outside of prison.  This requires not only calculations as to infection rates in the community where he would be located, but information as to the residents and visitors that he would likely encounter and what protective measures he would take. One might guess that he would resume associations with friends and family. To the extent that such individuals do not adhere to safe practices, such as wearing masks, washing hands, and social distancing, Mr. Hutson's risk of contracting COVID-19 may actually be greater if he is at liberty and if he is in FCI Big Spring.  Absent evidence from which the Court can compare risks of infection, it cannot conclude that Mr. Hutson would necessarily face a reduced risk of infection if released.

Finally, Mr. Hutson's risk of contracting COVID-19 is only one component in determining whether his medical needs require his release.  The other components include what complications he may suffer if he contracts COVID-19 and whether he can obtain proper medical treatment for those complications while in the custody of the BOP.  Beyond the bare observation that Mr. Hutson's cardiac condition is among the CDC factors that increase risk of COVID-19-related complications, no information has been presented that assists the Court in ascertaining what  Mr. Hutson's likelihood of experiencing complications is, what medical

treatment might be required, or whether the BOP is prepared to provide the appropriate

treatment.

In summary, Mr. Hutson is justifiably afraid of contracting COVID-19, especially in light

of his health concerns.  But there is no showing that there is yet a significant risk that Mr. Hutson

will contract COVID-19 while at Big Spring or that such risk is greater than he would face if he

were released.  Similarly, there is no showing that if Mr. Hutson contracted COVID-19, what

complications he might experience and that the BOP would not be able to provide appropriate

medical care.  In the absence of this information, the Court cannot conclude that Mr. Hutson's

current or future need for medical care justifies a sentence modification. Put differently, the

current showing as to his need for medical care does not change the Court's prior assessment of

sentencing objectives under §3553(a).[3]

---

[3]     The Court would be remiss if, in examining the §3553(a) factors, it did not comment briefly on new developments that bear on the objective of deterring future crimes by Mr. Hutson. Since his incarceration, Mr. Hutson has, on two occasions, filed documents in this case that continue to illustrate the same distorted understanding of the law that gave rise to the charges on which he was convicted.

Specifically, he has filed: (i) a November 26, 2018 "Notice of Dishonor" **(# 212)** addressed to the United States Attorney, demanding that it make some unspecified "performance or payment" within 10 days; and (ii) a December 11, 2018 "Notice of Default" **(# 214)**, against addressed to the United States Attorney, purporting to "discharge and close any/all account(s) involving Rocky Hutson, Member ID 43591013" and to "cease and desist in this action" (apparently the prosecution and detention of him), "forthwith."  Mr. Hutson's references to "payment" and "accounts" in these filings bear a troubling echo of the same criminal conduct for which he was convicted in this action, which involved Mr. Hutson requesting government payments from fictitious "accounts" allegedly held in his name.  Thus, although the Court may have initially considered that Mr. Hutson presented a low risk of recidivism, his post-sentencing conduct offers some suggestion that that prediction may have been overly optimistic.  In some ways, this factor tips more towards a full custodial sentence than it did at the time of Mr. Hutson's original sentencing, dissipating somewhat any countervailing effect of the medical care factor.

For these reasons, Mr. Hutson's motions and related filings seeking compassionate release (**# 220, 232, 236, 237**) are **DENIED**.

Dated this 24th day of August, 2020.

**BY THE COURT:**

Marcia S. Krieger
Senior United States District Judge